**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **DAVID MEZA, an individual, on behalf of himself and all others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**PACIFIC BELL TELEPHONE COMPANY, a California corporation, and DOES 1 through 10,**<br><br>Defendants. | **1:17-cv-00665-LJO-JLT**<br><br>**MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION TO REMAND TO KERN COUNTY SUPERIOR COURT (Doc. 4)** |

## I. INTRODUCTION

On November 30, 2015, Plaintiff David Meza commenced this action, individually and on behalf of similarly situated individuals, against Defendant Pacific Bell Telephone Company ("Defendant") and Does 1 through 10, in Kern County Superior Court. Doc. 1 at 2 ¶ 1; Exhibit ("Ex."). A. Plaintiff filed amended complaints on January 11, 2016, and January 9, 2017. *Id*. at 3 ¶¶ 3, 5; Exs. B, D. Plaintiff's second amended complaint alleges that Defendants violated provisions of the California Labor Code and the California Business and Professions Code, and that Plaintiff was wrongfully terminated in violation of public policy. *Id.* at Ex. D. On May 12, 2017, Defendant removed the action to this Court, asserting federal question jurisdiction under 28 U.S.C. § 1331, and the Labor Management Relations Act ("LMRA"), codified at 29 U.S.C. § 141 *et seq*. Doc. 1 at 7 ¶ 18.

On May 19, 2017, Plaintiff filed the instant motion to remand. Doc. 4. Defendant filed an opposition on June 30, 2017. Doc. 5. Plaintiff filed a reply on July 6, 2017. Doc. 6. For the following reasons, Plaintiff's motion to remand is GRANTED.

## II. FACTUAL BACKGROUND

The following facts are drawn from the filings in this matter. Plaintiff was employed as a

1

Premises Technician by Defendant from January 17, 2014, until September 9, 2015. Doc. 1 at 70 ¶ 9. Plaintiff filed this action in Kern County Superior Court on November 30, 2015. Doc.1 at 2 ¶ 1. The initial complaint stated claims for "Failure to Pay Compensation Due for Hours Worked," "Meal Period Violations," "Rest Period Violations," "Wage Statement and Recordkeeping Violations," "Failure to Pay Waiting Time Wages Pursuant to Labor Code Section 203," "Failure to Indemnify Expenses," "Violation of Business & Professions Code Section 17203," "Recovery of Civil Penalties Pursuant to the California Private Attorney General Act," and "Wrongful Termination in Violation of Public Policy." *Id*. at 1 ¶ 2; 15-16. On January 11, 2016, Plaintiff filed a first amended complaint. Doc. 1 at 3 ¶ 3. Defendant filed an answer on February 9, 2016. *Id*. Plaintiff was granted leave to amend and filed a second amended complaint on December 6, 2016, alleging failure to incorporate non-cash benefits in overtime payment calculations. *Id.*; Doc. 1 at 78-79 ¶ 41. The second amended complaint also alleged that Defendant stated a value for overtime on non-cash benefits in earnings statements but did not list a corresponding number of hours worked. *Id*. Defendant filed an answer on March 20, 2017. Doc. 1 at 3-4 ¶ 6. On April 13, 2017, Plaintiff's counsel e-mailed Defendant's counsel regarding overtime "true ups" paid by Defendant on the cash value of merchandise items given to employees through a non-cash bonus program known as "Five Star." Doc. 1 at 5 ¶¶ 12-13; Doc. 5-1 at 6. On May 12, 2017, Defendant filed a notice of removal. Doc. 1.

### III. **STANDARD OF DECISION**

A case is removable if it is one over which the district court has jurisdiction. 28 U.S.C. § 1441(a). There is a strong presumption against removal jurisdiction, and "the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc*., 980 F.3d 564, 566 (9th Cir. 1992). District courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Determination of federal question jurisdiction "is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of plaintiff's properly pleaded complaint." *Caterpillar*

*Inc. v. Williams*, 482 U.S. 386, 392 (1987). To invoke federal question jurisdiction, a complaint must establish "either that (1) federal law creates the cause of action or that (2) plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement*, 524 F.3d 1090, 1100 (9th Cir. 2008).

The well-pleaded complaint rule "makes a plaintiff the master of his complaint: it allows him to avoid federal jurisdiction by relying exclusively on state law." *Balcorta v. Twentieth Century–Fox Film Corp.*, 208 F.3d 1102, 1107 (9th Cir. 2000). Thus, it is "settled law that a case may not be removed to federal court on the basis of a federal defense, including a defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 14 (1983). "There does exist, however, a corollary to the well-pleaded complaint rule, known as the 'complete preemption' doctrine. The Supreme Court has concluded that the preemptive force of some statutes is so strong that they 'completely preempt' an area of state law." *Balcorta*, 208 F.3d at 1107 (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). "In such instances, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Balcorta*, 208 F.3d at 1107 (citing *Franchise Tax Bd. of Cal.*, 463 U.S. at 24).

### IV. ANALYSIS

**A.     Timeliness**

Plaintiff asserts that removal was untimely because this action was not removed within 30 days of service of the original complaint. Doc. 4 at 8. Plaintiff argues that Defendant's removal was premised on the argument that federal law pre-empted Plaintiff's overtime claim, and that the overtime claim appeared in the initial complaint. *Id*. Defendant contends that the April 13, 2017, e-mail from Plaintiff's counsel regarding calculations of overtime true-ups was the first paper from which Defendant could discern that this action was removable. Doc. 5 at 8. Defendant argues that, while Plaintiff included

allegations pertaining to non-cash benefits in his second amended complaint, Defendant understood Plaintiff's theory of the claim to be "whether [Defendant] was require to pay overtime compensation at all on the bonuses at issue." *Id*.

The timing of removal is governed by 28 U.S.C. § 1446(b)(1), which provides "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt of the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." If the initial pleading does not state a removable case, "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). "In other words, even if a case were not removable at the outset, if it is rendered removable by virtue of a change in the parties or other circumstance revealed in a newly-filed 'paper,' then the second thirty-day window is in play." *Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005). "[R]emoval statutes should be construed narrowly in favor of remand to protect the jurisdiction of state courts." *Id*. at 698.

"[N]otice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." *Harris*, 425 F 3d at 694. In *Harris*, the Ninth Circuit adopted a bright line rule that "grounds for removal must be revealed affirmatively in the initial pleading in order for the first thirty-day clock under § 1446(b) to begin." *Id*. If no grounds for removal appear on the face of the initial pleading, "the case is 'not removable' at that stage." *Id.* at 695. "In such case, the notice of removal may be filed within thirty days after the defendant receives 'an amended pleading, motion, order or other paper' from which it can be ascertained from the face of the document that removal is proper." *Id*.

"Thus, even if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because it did not conduct such an investigation and then file a notice of removal within thirty days of receiving [an] indeterminate document." *Roth v. CHA*

4

*Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013). Instead, "§§ 1441 and 1446, read together, permit a defendant to remove outside the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines." *Id*. If "the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable, the thirty-day period never starts to run and the defendant may remove at any time." *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014).[1]

The initial complaint and the first amended complaint in this action did not state any claims under federal law. The claims were based on the California Labor Code, the Wage Order issued by the Industrial Welfare Commission, the California Business and Professions Code, the California Private Attorney General Act, and California public policy. *See* Doc. 1 at 16-58. The second amended complaint also did not explicitly invoke any federal law. While Defendant argues that it was made aware of the federal basis for Plaintiff's claims by the e-mail sent on April 13, 2017, the e-mail itself does not, on its face, state any basis for federal question jurisdiction. Since no grounds for removability have been stated "within the four corners" of any pleading or other paper filed by Plaintiff, neither of the thirty-day periods for removability under 28 U.S.C. § 1446 have begun to run. Therefore, Defendant's removal was not untimely.

**B.** **<u>Removability under § 301</u>**

Section 301 of the LMRA ("§ 301"), as codified at 29 U.S.C. § 185(a), states in pertinent part that:

Suits for violation of contracts between an employer and a labor organization

---

[1] Some courts, uncomfortable with *Harris*'s effect of granting an effectively permanent removal power to a defendant, have construed § 1446 literally and remanded cases on the basis that removal, where no pleading or other paper established a basis for jurisdiction, was "premature rather than untimely." *Adelpour v. Panda Express, Inc.*, No. CV 10-02367 MMM (AGRx), 2010 WL 2384609, at *6 (C.D. Cal. June 8, 2010) (quoting *Rossetto v. Oaktree Capital Mgmt, LLC*, 665 F. Supp. 2d 1122, 1130 (D. Haw. 2009)); *see also Eguia v. ARC Imperial Valley*, No. 12-cv-1132-L (PCL), 2012 WL 6061323, at *4 (S.D. Cal. Dec. 6, 2012); *B.C. v. Blue Cross of Cal.*, No. CV 11-08961 GAF (AJWx), 2012 WL 12782, at *6 (C.D. Cal. Jan. 3, 2012). The Supreme Court has concluded that removal is proper even when a federal claim does not appear on the face of a complaint if the state law claim is completely preempted, as such a "suit is purely a creature of federal law." *Franchise Tax Bd. of Cal.*, 463 U.S. at 23. Therefore, so long as complete preemption applies, "whether pre-emption [*sic*] was obvious or not at the time the suit was filed" is immaterial. *Metro. Life Ins. Co.*, 481 U.S. at 66.

representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

In enacting § 301, Congress created a mandate for federal courts "to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985).

The Supreme Court has noted that the LMRA "does more than confer jurisdiction in the federal courts over labor organizations. It expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in that way." *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 456–57 (1957); *see also Local 174, Teamsters of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962) ("The dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute."). As a result, because "[a]n action arising under § 301 is controlled by federal substantive law even though it is brought in state court," the Supreme Court has deemed it proper for such cases to be removed to federal court under federal question jurisdiction. *Avco Corp. v. Aero Lodge No. 375, Intern. Ass'n of Machinists and Aerospace Workers*, 390 U.S. 557, 560 (1968).

Section 301 preemption subsequently expanded "beyond cases specifically alleging contract violation to those whose resolution is 'substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract.'" *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir. 2001) (en banc) (citing *Allis–Chalmers Corp.*, 471 U.S. at 205 (1985)). "The preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd. of Cal.*, 463 U.S. at 23 (internal quotation marks omitted). "Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." *Id*.

Nevertheless, "not every dispute concerning employment, or tangentially involving a provision

of a [CBA], is preempted by § 301 or other provisions of the federal labor law." *Allis–Chalmers Corp.*, 471 U.S. at 211. The Supreme Court has clarified that § 301 preemption applies only to "claims founded directly on rights created by collective-bargaining agreements, and claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar Inc.*, 482 U.S. at 394 (quoting *Franchise Tax Bd. of Cal.*, 463 U.S. at 23). *Caterpillar Inc.* also explicitly rejected the argument that "all employment-related matters involving unionized employees be resolved through collective bargaining and thus be governed by a federal common law created by § 301." 482 U.S. at 396 n.10 (internal quotation marks omitted). In other words, a defendant cannot invoke § 301 preemption merely by "alleging a hypothetical connection between the claim and the terms of the CBA" or a "creative linkage between the subject matter of the claim and the wording of a CBA provision." *Cramer*, 255 F.3d at 691-92. "[R]ather, the proffered interpretation argument must reach a reasonable level of credibility." *Id*. at 692.

The Ninth Circuit established a two-part test for determining whether a claim is preempted by § 301 in *Burnside v. Kiewit Pacific Corp*. 491 F.3d 1053, 1060 (9th Cir. 2007). First, a court must "determine whether a particular right inheres in state law or, instead, is grounded in a CBA" by considering "the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement [and] not whether a grievance arising from 'precisely the same set of facts' could be pursued." *Id*. (emphasis in original) (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123, (1994)). The *Burnside* panel clarified that a defense relying on the terms in a CBA is "not enough to 'inject [ ] a federal question into an action that asserts what is plainly a state-law claim.'" 491 F.3d at 1060 (quoting *Caterpillar Inc.*, 482 U.S. at 398–99) (explaining that "the plaintiff is the master of the complaint," and that if the defendant could engineer "the forum in which the claim shall be litigated" based on the substance of his defense, "the plaintiff would be master of nothing"); *see also Cramer*, 255 F.3d at 691 (noting that the plaintiff's claim itself is the 'touchstone' for preemption analysis). "If the right exists solely as a result of the CBA, then the claim is preempted, and [the] analysis ends there." *Burnside*, 491

F.3d at 1059.

Second, if the claim exists independently from the CBA, the court must still decide whether it is "'substantially dependent' on the terms of a CBA" by determining "whether the claim can be resolved by 'looking to' versus interpreting the CBA." *Id*. at 1060 (brackets omitted) (citing *Caterpillar Inc.*, 482 U.S. at 394 and *Livadas*, 512 U.S. at 125). If the claim requires interpretation of the CBA, the claim is preempted, but if the claim merely requires the court to "look to" the CBA, it is not. *Burnside*, 491 F.3d at 1060. Although the distinction between "looking to" and "interpreting" is "not always clear or amenable to a bright-line test," *see id*.; *Cramer*, 255 F.3d at 691, "when the meaning of the contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require that the claim be extinguished." *Livadas*, 512 U.S. at 124. "Looking to the CBA merely to discern that none of its terms is reasonably in dispute" or allegations of "a hypothetical connection between the claim and the terms of the CBA" do not trigger preemption, *Cramer*, 255 F.3d at 691, 692 (internal quotation marks and brackets omitted), nor does "the simple need to refer to bargained-for wage rates in computing [a] penalty." *Livadas*, 512 U.S. at 125.

Defendant, who has the burden of showing that removal was proper, removed this action based on § 301, asserting that "Plaintiff's overtime claims require substantial interpretation of a CBA between an employer and a union to determine whether [Defendant] properly calculated overtime under CBA [*sic*]." Doc. 1 at 7 ¶ 18. Defendant contends that the degree of interpretation of the CBA which is necessary to address his claims requires complete preemption of Plaintiff's state law claims. Doc. 5 at 9. Defendant asserts that "preemption would also apply to any derivative claims for violation of [California] Labor Code [§] 226 arising from the allegation that [Defendant] reported the incorrect amount of overtime on employees' wage statements and claims for waiting time penalties" because such allegations necessarily depend on whether overtime was calculated correctly. Doc. 1 at 11 ¶ 32, Doc. 5 at 12. Therefore, as Defendant has the burden of showing that removal was proper and Defendant has

8

only advanced arguments that claims related to overtime payments are preempted, the Court will focus its attention on the overtime claims.

### 1. **Overtime Claims**

Plaintiff alleges in his second amended complaint that Defendant failed to pay Plaintiff and other class members overtime and double time wages for all hours worked as required by California Labor Code § 510. Doc. 1 at 76-77 ¶¶ 35-37. Specifically, Plaintiff alleges that Defendant required workers to work off the clock while preparing vehicles and tools for jobs and during their state-mandated meal breaks. *Id*. at 75, ¶27; 77 ¶¶ 37-39. Additionally, Plaintiff alleges that Defendant failed to accurately include non-cash benefits in calculating employees' regular rates of pay for overtime purposes, and failed to provide proper documentation of how the overtime payments related to the non-cash benefits were calculated. *Id*. at 78-79, ¶ 41.

Defendant's argument that § 301 preemption applies to this claim rests upon the assertion that Plaintiff's claims are founded directly upon rights created by the CBA or require interpretation of provisions of the CBA. Doc. 5 at 10. Defendant argues that the CBA provides that the Union has "sole power to execute agreements with [Defendant] in regard to rates of pay, wages, hours of employment and other conditions of employment affecting [Plaintiff]," Doc. 5 at 11; Doc. 5-2 at 14, and that all wage disputes necessarily require interpretation of the CBA. Defendant concedes that the CBA does not explicitly address how non-cash benefits are to be calculated for the purpose of overtime payments. Doc. 5 at 11. Defendant contends, however, that the Union and Defendant have adhered to certain practices by which overtime payments for non-cash bonuses are calculated. *Id*. Those practices, along with the CBA provisions calculating payment for overtime, Defendant argues, must be interpreted to determine whether Defendant properly paid overtime. *Id*. at 8. The same determination would also apply to Plaintiff's claims of incorrect reporting on wage statements and other derivative wage claims. *Id*.[2]

---

[2] Defendant briefly asserts that California Labor Code § 514 provides a basis for removal in its notice of removal. Doc. 1 at

9

Applying the first *Burnside* factor, the Court finds that the right to overtime pay asserted by Plaintiff is a state law right as opposed to one created solely by the CBA. While both the CBA and state law provide guarantees of overtime payments, Plaintiff's overtime claim is explicitly founded on state law grounds. California law requires that workers be paid overtime compensation. *See* Cal. Labor Code § 1194. The fact that the CBA provides for overtime wages does not displace rights provided by state law. A plaintiff governed by a CBA may "assert legal rights independent of that agreement." *Caterpillar Inc.*, 482 U.S. at 396. "[Section] 301 does not grant the parties to a [CBA] the ability to contract for what is illegal under state law. . . . [I]t would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Allis-Chalmers Corp.*, 471 U.S. at 212; *see also Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1076 (9th Cir. 2005) ("[I]n order for complete preemption to apply, 'the need to interpret the CBA must inhere in the nature of the plaintiff's claim. If the claim is plainly based on state law, § 301 pre-emption is not mandated simply because the defendant refers to the CBA in mounting a defense.'") (quoting *Cramer*, 255 F.3d at 691). "Claims bearing no relationship to a collective-bargaining agreement beyond the fact that they are asserted by an individual covered by such an agreement are simply not pre-empted by § 301." *Caterpillar Inc.*, 482 U.S. at 396 n.10. The rights asserted by Plaintiff in his complaint are based on rights created under California state law, not on the terms of the CBA. Therefore, the first *Burnside* prong has not been met.

Turning to the second prong of *Burnside*, the Court concludes that resolving Plaintiff's overtime

---

5-6 ¶¶ 14-15. Section 514 provides that the protections of California Labor Code § 510 regarding overtime pay do not apply to employees with a valid CBA if the CBA "expressly provides for wages, hours of work, and working conditions for the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Defendant did not develop this argument in its opposition brief. The invocation of § 514 is an affirmative defense to the application of § 510, and cannot give rise to § 301 preemption. *Densmore v. Mission Linen Supply*, 164 F. Supp. 3d 1180, 1190-91 (E.D. Cal. 2016); *Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 954 (C.D. Cal. 2014). A defense based on a CBA does not establish federal jurisdiction. *Caterpillar Inc.*, 482 U.S. at 398-99 ("[A] defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law. . . . Congress has long since decided that federal defenses do not provide a basis for removal.") (emphasis omitted). To the extent that Defendant relies on § 514 as a defense to the application of § 510, that section cannot form the basis for federal question jurisdiction.

claims does not substantially depend on interpreting provisions of the CBA. Defendant argues that practices have been established between the Union and Pacific Bell as to how non-cash benefits are calculated into overtime payments. While Defendant has not provided any evidence regarding the specific details of those calculations, the declaration of Jennifer Luttrell, a lead labor relations manager for Defendant's parent company, AT&T, does provide sufficient evidence at this stage that such practices are in place. *See* Doc. 5-2 at 1, 3.

The mere reference to a CBA does not automatically cast the claim as one requiring the interpretation of a CBA. *Livadas*, 512 U.S. at 125 ("[W]hen liability is governed by independent state law and the meaning of contract terms is not in dispute, the bare fact that a collective-bargaining agreement is consulted for damage computation is no reason to extinguish the state-law claim."). If resolving the dispute, which is here a question of overtime payment calculation, requires a reviewing court to "look to" the CBA for a rate or formula, no interpretation is required and § 301 preemption does not apply. *See id.* (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 n.12 (1988)). Whether Defendant properly paid overtime in compliance with state law is a separate question from whether the overtime payments were in compliance with the CBA, and it is the former claim which Plaintiff makes in his complaint.

Additionally, when addressing disputes involving procedures and rules not embodied or defined in a CBA, some courts have found that resolving the dispute does not involve interpreting a provision of the CBA. *Patterson v. Exxon Mobil Corp*, 262 F. Supp. 2d 453, 459 (D.N.J. 2003) (finding that where a CBA states that "awards to positions will be made on the basis of qualifications for the position" but the qualifications are not contained in the CBA and are developed outside of the CBA, no interpretation of a CBA provision is required); *Coefield v. Jersey Cent. Power & Light Co.*, 532 F. Supp. 2d 685, 696-97 (D.N.J. 2007) (where no provision in a CBA defines the meaning of the term "qualified" for the purpose of overtime assignment, and the employer has established practices and procedures apart from the CBA for determining whether an employee is "qualified," no interpretation of the CBA is required); *see also*

*Spoerle v. Kraft Foods Global, Inc.*, 614 F.3d 427, 430 (7th Cir. 2010) ("Making a given CBA hard to interpret and apply (as the word 'reasonable' would be) would not preempt state law . . . ."). Other courts have found that the interpretation of a CBA is necessary when there is a gap in the CBA's terms. In those cases, however, the dispute has hinged on the meaning of the parties' contract and the rights created or waived thereby, rather than on whether the defendant complied with state law. *See Vera v. Saks & Co.*, 335 F.3d 109, 115-16 (2d Cir. 2003) (case required determination of whether CBA constituted an agreement to alter the common law rule and whether a term of the CBA was legal under state law); *Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495, 500-01 (7th Cir. 1996) (claims required interpreting a CBA to determine the amount, method, timing, and payment of bonuses and raises for purposes of state penal statute because the statute turned on entitlements established by the CBA); *Nat'l Metalcrafters, Div. of Keystone Consol. Indus. v. McNeil*, 784 F.2d 817, 824 (7th Cir. 1986) (interpretation of a CBA was required where the only obligation created by state law was that an employer honor its CBA); *Hildebrand v. Rousselot, Inc.*, No. 09-CV-1016-LRR, 2010 WL 378314, at *5 (N.D. Iowa Jan. 26, 2010) (claims required interpretation of CBA to determine whether a union agreed on behalf of its members to subrogation). This case, as pled by Plaintiff, presents questions of whether Defendant complied with state laws which are not modified or dependent on the terms of the CBA. Finally, the Court is mindful that the removal statute is strictly construed against removal jurisdiction and that "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566. Taking the foregoing into account, the Court finds that the second prong of *Burnside* criteria has not been met and that Plaintiff's overtime claim is not preempted by § 310. Accordingly, Defendants' arguments for removal also fail as to the derivative claims and Plaintiff's motion to remand is GRANTED.

**C.    Attorney's Fees**

Plaintiff has requested attorney's fees and costs under 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including

attorney fees, incurred as a result of the removal." Doc. 4 at 19. Defendant opposes an award of fees, arguing that it had an objectively reasonable basis for removal. Doc. 5 at 15. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Generally, whether to award attorney's fees pursuant to § 1447(c) is a matter left to the Court's discretion. *Patel v. Del Taco, Inc.*, 446 F.3d 996, 999 (9th Cir. 2006); *Moore v. Permanente Medical Group*, 981 F.2d 443, 448 (9th Cir. 1992).

While the Court has found that removal jurisdiction was not warranted in this case and that removal was improper as a matter of law, the Court does not find that Defendant's position lacked an objectively reasonable basis. Courts have come to differing conclusions as to when state law claims are preempted under § 301, and while Defendant's arguments were not persuasive, they were not so objectively unreasonable as to warrant an award of attorney's fees. Other courts addressing similar issues have declined to award attorney's fees despite finding no preemption under the LMRA. *See, e.g., Densmore v. Mission Linen Supply*, 164 F. Supp. 3d 1180, 1197-98 (E.D. Cal. 2016) (collecting cases). The Court likewise DENIES Plaintiff's motion for attorney's fees.

## V. CONCLUSION AND ORDER

For the foregoing reasons, Plaintiff's motion to Remand this case to Kern County Superior Court is GRANTED, and Plaintiff's motion for attorney's fees and costs under 28 U.S.C. § 1447(c) is DENIED.

IT IS SO ORDERED.

Dated: **August 16, 2017**              /s/ Lawrence J. O'Neill
                                                  UNITED STATES CHIEF DISTRICT JUDGE